IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PITT VESOM, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-2218-CM |
| | ) | |
| ATCHISON HOSPITAL ASSOCIATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case comes before the court on a motion by the plaintiff, Pitt Vesom, M.D., to compel defendant Atchison Hospital Association (the "Hospital") to produce certain documents that the Hospital claims are subject to attorney-client privilege and attorney work product protection **(doc. 107)**. The court has reviewed plaintiff's motion and his supporting memorandum (doc. 108), the Hospital's response (doc. 109) and supporting exhibits (doc. 110), and plaintiff's reply brief (doc. 112). Finally, as suggested by the parties, the court has conducted an *in camera* review of the few documents at issue (*see* doc. 133).

For benefit of context, the court simply notes here that, in plaintiff's complaint (doc. 1), he claims that he was wrongfully denied medical privileges as a result of his race and because of his complaints about staff procedures and mortality rates in the Hospital's obstetrics department. Plaintiff has sued the Hospital and three physicians associated with the Hospital – Ryan Thomas, M.D., Douglas Goracke, M.D., and John Swayze, D.O.

O:\M & O\04-2218-107.wpd

Plaintiff asserts several alternative theories of relief, i.e., racial discrimination in violation of 42 U.S.C. § 1981 (Count I), 42 U.S.C.§ 2000d (Count II), and 42 U.S.C.§1985(3) (Count III), conspiracy to restrain trade in violation of section 1 of the Sherman Antitrust Act (Count IV), a whistle-blower protection claim (Count V), and intentional interference with business relationships (Count VI).  Defendants assert that the decision to terminate plaintiff's staff privileges at the Hospital was entirely lawful, in that it was based on the results of a regularly conducted, objective peer review process.

The parties' papers discuss at great length various meetings between counsel and the Hospital's so-called Medical Executive Committee.  They also raise the issue of whether an attorney-client relationship exists between the individual members of the Medical Executive Committee and counsel for the Hospital.  But it is important to keep in mind that the instant motion is quite narrow in scope  – the motion does <u>not</u> seek to compel disclosure of the oral communications during the above-described meetings.  That is, the parties have limited the issue to be decided by the court to just a few, specific documents in defense counsel's files, which documents involve a combined total of less than twenty pages of material.

Based on its *in camera* review, the court finds that the documents at issue constitute privileged attorney-client communications between counsel and the Hospital, or are protected attorney work product material, or both.  In many other cases,[1] the court has found it necessary to provide a detailed discussion of  the principles governing attorney-client

---

[1] *See, e.g., Burton v. R.J. Reynolds Tobacco Co.*, 200 F.R.D. 661, 669-79 (D. Kan. 2001).

privilege and work product protection, because the practicing bar, understandably so, tends to be a bit too aggressive in asserting these sorts of objections to discovery.  Here, though, a detailed discussion and analysis is unnecessary.  It suffices to say that the documents in question are classic examples of attorney-client communications and attorney work product material.

The <u>only</u> issue that is now before the court is whether defendants have waived the above-described protections by pleading in their answer, along with sixteen other purported affirmative defenses (*see* doc. 90 at 3-5), certain provisions the Health Care Quality Improvement Act ("HCQIA").[2]  The parties agree that the HCQIA significantly limits the liability of peer review participants and hospitals in cases seeking monetary damages.

The parties' discovery dispute appears to present a case of first impression.  In researching this matter, the court has not unearthed any reported case that has addressed the issue of whether a defendant's reliance on the limitation-of-liability provisions of the HCQIA operates as a waiver of  attorney-client privilege or work product protection.  Notably, plaintiff has not cited any case that directly supports this proposition.  Instead, plaintiff (and the Hospital) have looked beyond the HCQIA and analyzed this issue under general principles dealing with waiver of attorney-client privilege and work product protection.

Plaintiff begins his analysis by arguing that immunity under the HCQIA requires that a four-part standard be satisfied:

---

[2] 42 U.S.C. § 11101-11152.

> [A] professional review action must be taken–
>
> > (1) in the reasonable belief that the action was in the furtherance of quality health care,
> > (2) after a reasonable effort to obtain the facts of the matter,
> > (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
> > (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).[3]

Plaintiff next argues that "the investigation, deliberations, discussions, and communications of the Medical Executive Committee on the subject of terminating the staff privileges of Dr. Vesom . . . are of critical importance in resolving" fact issues relating to the applicable standard.  And finally, plaintiff argues that communications between the Medical Executive Committee and its attorney are relevant because plaintiff suspects that counsel was involved in the investigation leading to his dismissal.[4]

Plaintiff analogizes the instant case to traditional employment discrimination cases in which the defendant-employer attempts to avoid liability for damages by affirmatively pleading and proving that it had conducted an adequate investigation before terminating the

---

[3] 42 U.S.C. § 11112.

[4] The court finds, based on its *in camera* review, that <u>none</u> of the documents at issue are investigative in nature.

plaintiff-employee.  In such cases, courts have found that the attorney-client privilege was waived to the extent that counsel was involved in the investigation.[5]

The case at bar is distinguishable.  In the employment discrimination cases cited by plaintiff, there was no question that each of the defendants raised an *affirmative* defense.  In fact, the so-called *Hearn* test cited by plaintiff requires that a party affirmatively put the attorney-client privileged communications at issue.[6]  Therefore, that test also requires that the defendant raise an *affirmative* defense.

Irrespective of the way in which defendants framed their answer, the court simply is unpersuaded that sections 11111 and 11112 of the HCQIA create an affirmative defense.  Significantly, plaintiff has pointed to no part of the statute, its legislative history, or case law to support the notion that an affirmative defense is involved here.

It is true that defendants specifically refer to the HCQIA in a laundry list of affirmative defenses pleaded in their answer.  But that does not make it an affirmative defense  –  if defendants were to have pleaded in their answer that the sun rises in the west, that would not make it so.  As a matter of law, an affirmative defense is one which the defendant bears the burden of proving.[7]  In the case at bar, defendants do <u>not</u> bear the burden of proving that the Hospital's peer review process comported with the HCQIA.  Instead, the statute provides on its face that "[a] professional review action <u>shall be presumed</u> to have met

---

[5] *See, e.g., Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19 (N.D.N.Y. 1999).

[6] *See Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975).

[7] Black's Law Dictionary (8th ed. 2004).

the preceding standards necessary for the protection set out in section 11111(a) of this title <u>unless the presumption is rebutted by a preponderance of the evidence</u>."[8]  This means that, unless and until plaintiff comes forward with some proof at trial that shows by a preponderance of the evidence that the Hospital's peer review process did not meet the standards set forth above, defendants are under <u>no</u> obligation to present <u>any</u> evidence.

 The HCQIA creates a rebuttable presumption that the plaintiff must overcome.  This strikes the court as fundamentally different from an affirmative defense that the defendants must prove.  As set forth above, the documents at issue are not investigative in nature, and in any event this case is clearly distinguishable from those involving affirmative defenses.  Therefore, at least based upon the factual and legal record presented by the parties, the court rejects plaintiff's argument that defendants have waived attorney-client privilege and work product protection merely by referring to the limitation-of-liability provisions of the HCQIA in defendants' answer.  To rule otherwise would be illogical and unfair.

Accordingly, plaintiff's motion to compel **(doc. 107)** is denied.

IT IS SO ORDERED.

Dated this 17th day of August, 2005, at Kansas City, Kansas.


 s/James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[8] 42 U.S.C. § 11112 (emphasis added).